JOHN W. BATESON V. LUKE CHOATE AND JOHN HEMPHILL.

No. 7526.

1. **Equitable Relief.**—A plaintiff seeking to have a deed absolute in form declared a mortgage, should offer to do equity by offering to pay the debt secured by the mortgage the existence of which he asserts.

2. **Practice.**—While the petition was defective by reason of its failure to offer payment of any balance due upon the debt if the deed should be declared a mortgage, but the defendant set up the deed as title, and in the alternative asked foreclosure, denying payment. This presented the issue whether the deed attacked by the plaintiff was a mortgage.

3. **Injunction.**—A party seeking possession or protection against injury to the land in controversy, either in trespass to try title or to foreclose a mortgage, must resort to the writ of sequestration. Injunction is not the remedy.

4. **Immaterial Error.**—Errors affecting a defendant made a party, but who is shown by the pleadings and evidence to have no interest in the matter in litigation, and who does not appeal, are immaterial on appeal by a codefendant.

5. **Defective Charge.**—Issue whether Choate, the appellee, held title or mortgage to two adjoining tracts of land, one of 28 acres and the other of 75 acres. Choate had paid, at Bateson's request, a foreclosure judgment upon the 75 acres. To secure Choate for the money advanced, Choate was placed in possession of the 75 acres, and was handed a note for $300 on Hemphill, secured by him on the 28 acres. On maturity of Hemphill's note, with consent of all parties, he deeded the 28 acres to Choate and took up his note. Subsequently Bateson made a deed for the 75 acres to Choate. Bateson sought to have this last deed declared a mortgage. The testimony was conflicting as to the purpose of this deed, whether it was a final settlement between Bateson and Choate, or intended as a security, and whether the deed from Hemphill was absolute or a security. *Held*, it was error to submit the issue as to the entire controversy as depending upon whether the deed for the 75 acres was absolute.

Appeal from Johnson. Tried below before Hon. J. M. Hall.

*Henry & Green*, for appellant.

*C. V. Myers* and *Poindexter & Padelford*, for appellees.

COLLARD, Judge, *Section A.*—The following statement of the nature and result of the case, made by appellant, is accepted by the appellees as correct, with some additions, which will be noted:

Appellant, John W. Bateson, as plaintiff below, brought this suit on the 5th day of September, 1888, in form of trespass to try title, against appellees, Luke Choate and John Hemphill, to recover 103⅔ acres of land of the T. D. Clark survey, in Johnson County, which land is described in the petition, to remove cloud, for rents and damages.

Plaintiff specially set up that defendant Choate paid off a judgment of $624.45, with foreclosure of lien on the 75 acres of land sued for, at the request of plaintiff, which the Lorance estate held against plaintiff, with the understanding that said Choate should hold said judgment as security for the repayment of the money so advanced by him, and interest. That plaintiff deposited with said Choate, as collateral security, a note for $300, payable to order of plaintiff, and signed by defendant Hemphill, retaining vendor's lien on the 28⅔ acres of land. That after the maturity of said $300, Hemphill paid said note, with the consent of plaintiff and defendant Choate, by making his warranty deed to Choate to the said 28⅔ acres of land, which deed Choate accepted as security in lieu of said note, and surrendered said note to Hemphill, and said 28⅔ acres of land became the property of plaintiff subject to said lien. That on the —— day of ——, 188—, plaintiff executed and delivered to Choate his warranty deed to the 75 acres tract of land in order to enable Choate to borrow enough money on the land to pay him what plaintiff owed him, if said loan was effected, or if the same failed, the land was to be conveyed back to plaintiff by Choate. The loan failed to be effected; Choate refuses to make deed. Prayer that said deed be cancelled, set aside, and annulled as a cloud upon plaintiff's title; that plaintiff have title vested in him out of both defendants, possession, and judgment against Choate for his damages and rents; and such other legal and equitable relief as the facts and pleadings will warrant.

At the November Term, 1888, defendants filed a general demurrer, general denial, and plea of not guilty. November 5, 1889, Choate, by leave, filed a separate answer, reiterating former answer, and pleading specially, that on December 1, 1884, he paid off a judgment of $624.45, with foreclosure of vendor's lien on the 75 acres tract of land described in plaintiff's petition, at the request of the plaintiff, which the Lorance estate held against the plaintiff; the plaintiff then promising to refund to

defendant his money, with 10 per cent interest thereon, in one year from said date; that plaintiff at that time deposited with the defendant as collateral security the promissory note of defendant Hemphill, secured by vendor's lien on the 28⅔ acres tract of land, payable to plaintiff, for the sum of $300, due twelve months from its date, bearing interest at 10 per cent per annum. When said note matured, Hemphill, by consent of all parties, deeded said 28⅔ acres of land to defendant Choate, and received his note cancelled, and plaintiff on the —— day of ———, 188—, conveyed the 75 acres to Choate, all of which satisfied said judgment, and said land became the property of Choate; that Choate was entitled to the use of land up to date of deeds for advancing plaintiff money on judgment. Defendant pleaded said deeds in the alternative as mortgages, and prayed for foreclosure.

Plaintiff on April 29, 1889, filed his first supplemental petition in reply to foregoing answer, demurrer, general denial, and plea of payment by account running from June 1, 1886, to January, 1888, for work, hauling, horse hire, and various other items, including rent of house from December 5, 1885, at $20 per month, $400, and rent of land in controversy for three years, at $100 per year, $300, aggregating more than the amount due defendant. To this defendant filed demurrer, denial, and plea of two years limitation.

On the 3d of December, 1889, plaintiff filed second supplemental petition, again denying answers of defendant, demurrer, usury, and statute of limitation of two years to defendant's claim of money loaned; and specially setting up that on the $624.45 loaned to plaintiff he agreed to pay defendant 2 per cent interest per month, which was also agreed to by defendant, and this interest, together with the house rent, rendered the contract usurious and void.

On application of defendant Choate, that plaintiff was cutting timber on, trespassing upon the land, and interfering with defendant's possession, injunction was issued restraining plaintiff from so doing until further order of the court. The writ is dated January 18, 1889.

On the day of trial, before announcement, and without leave of the court, plaintiff demurred, excepted specially to the injunction suit, and answered that by the writ he was deprived of the use of twenty acres of the land in cultivation, worth $100, which he claims as damages, and that he was further damaged in the sum of $50, for that he was poor and was engaged in hauling wood for a support, and but for the writ restraining him, he could have cut and hauled off the premises to the city of Cleburne wood of the net value of $50. He asks judgment for all of these damages against defendant and the sureties on the injunction bond.

On same day defendant moved to strike out the reply to the injunction suit, because it came too late. The judgment rendered on the 7th of

December, 1889, sustained the motion; and at the same time judgment was rendered for Choate, that he recover from plaintiff the 75 and 28⅔ acres of land from plaintiff and defendant Hemphill, granting writ of possession, perpetuating the injunction, and for $50 rent against the plaintiff.

There is no conflict in the testimony that Choate paid off the judgment of the Lorance estate against Bateson, foreclosing vendor's lien upon the 75 acres of land in suit, after an order of sale was issued, paying $624.45 and taking a written transfer of the judgment from the administrator at the time. At the time this was done, it was understood that he was to hold the land as security for the money so advanced for Bateson's benefit, and at the same time, as a further security, Bateson transferred to him the Hemphill note for $300, it being for the purchase price of the other 28⅔ acres sued for.

Plaintiff testified, that when the Hemphill note fell due, by agreement of all the parties, the latter conveyed the 28⅔ acres to Choate, and Hemphill's note was cancelled and surrendered to him. In this way Hemphill paid the note. Plaintiff testified, that Choate was to hold the land as security for the money advanced just as he held the note, but Bateson, the plaintiff, was to and did release Hemphill, and was to take the land subject to Choate's lien. Afterwards, plaintiff says, he saw he could not pay Choate, and he was pressing for his money. "So," he says, "I agreed with him that I would convey to him the 75 acres of land, and he, Choate, would then convey the 75 acres and the 28 acres back to me, and take my notes for the purchase money for what I owed him and retain a vendor's lien on the land, and by that means he could find sale for the notes and get his money; and if after trying this plan he failed to get money, we would let the matter stand as it was at first. To all this Choate agreed, and I made and delivered to him a deed on this understanding. He claims the land absolutely under said deed; he claims both tracts now, and has been living on the 75 acres ever since. He occupies two acres of the land. I agreed to let him have the use of the house and the two acres of land as an inducement to him to advance me that money. I did not agree to let him have it for nothing; he has never paid me anything, as rents or otherwise, for the house and land." He says: "They are worth $5 per month rent during the time he has occupied it. I have been in possession of the balance of said land, using, occupying, cultivating, and enjoying the same, and paying the taxes thereon all the time. * * * Choate never did say anything to me about paying him any rent for the land. He disposessed me of the land in this case by writ of injunction in January, 1889, and he has been in possession since that time. * * * There are about 20 acres in cultivation, that Choate has had about one year, of the rental value of $3 per acre. * * * He moved to the land after Christmas of 1885. When these deeds were to be made back

to me by Choate, he was to give me credit for all that was due me from him, and this is what we fell out about.''

Choate had tried to sell the land as his own just before suit, and when plaintiff learned this he called on Choate for a settlement.  '' I told him I would allow him 2 per cent a month on his money from date of the loan if he would give me my credits, and he could pick a man and I a man, and these two pick a third, and I would abide their decision.  He said he would do this.  A few days after that I saw him, and he said he would not pick a man, but when I brought him his money he would make me a deed.  He said it was $900.  I paid Choate on the amount I owed him, in work, cash, and other ways, from June, 1886, to this time, about $165, which he refused to credit me with.''

Plaintiff introduced in evidence warranty deed from Bateson to Choate, conveying the 75 acres, dated February 8, 1888; warranty deed from Bateson to Hemphill to 28⅔ acres, dated November 13, 1885, retaining vendor's lien to secure the $300 purchase money; also warranty deed by Hemphill to Choate to the 28⅔ acres, dated November 27, 1886, in extinguishment of the vendor's lien note.

Choate testified, that he lives on the 75 acres tract of land, and that he loaned the $624.45 for purposes and on conditions stated, and as follows: '' I got deed to land from Bateson and from Hemphill.  I hold the deeds and the judgment.  Neither of them has been paid.  The deed was a sale to me of the land for what he (Bateson) owed me, and was a full payment of what Bateson owed me.  The land is mine.  I never gave Bateson any credit for any sum as paid by him when Hemphill conveyed me land, nor when Bateson did.  I still hold it (the judgment), and am going to hold the deed and judgment for what he owes me.  Never agreed to pay rent for house I live in; he agreed to let me have the house free of rent until the money was paid back.  It is my house.  Bateson paid me $20.''  He denied each item of Bateson's account except the $20.  He had lived in the house on the 75 acres tract from the time he let Bateson have the money, and is living there now, and two acres of ground along with the house.

Defendant read the Lorance judgment against Bateson for $624.45 in District Court, dated December 1, 1884, foreclosing vendor's lien on the 75 acres of land, and the transfer of the judgment to him on — day of December, 1885.

M. A. Otis, administrator of Lorance estate, says, the parties came to him to draw the deed to the 75 acres of land; could not remember definitely anything that was said, but says that the impression they left upon him was that they had closed up the matter by Bateson deeding the 75 acres to Choate for money Choate had advanced to redeem the land from the judgment.

Hemphill also testified, that at the time he made the deed to Choate for

the 28⅔ acres of land his understanding was and is that it was intended by Bateson and Choate as a security for money Bateson owed him, and not an absolute deed.

The field notes show that the two surveys, together amounting to 103⅔ acres of land, adjoined each other.

The first assignment of error is addressed to the ruling of the court in striking out plaintiff's exceptions and answer to the injunction proceeding.

Before considering this assignment, it may be well to notice the peculiar and anomalous attitude of the plaintiff before the court. He acknowledges that Choate has a mortgage upon the premises sued for, and was put in possession of the land because of the mortgage; that the deed by Hemphill was intended as a mortgage, and that the deed he himself made to Choate was for the purpose of hypothecating the land thereby conveyed to raise the sum necessary to pay off the mortgage debt. He asks that the instruments be cancelled, that the transaction be declared evidence of mortgage only, and that Choate be ousted of possession; and yet he does not offer to perform the obligation the deeds and the transaction have imposed upon him; he does not offer to pay the balance due, and denies Choate's right of foreclosure. Before asking relief he should have tendered performance of his apparent obligations. Calhoun v. Lumpkin, 60 Texas, 190.

His own testimony shows that he only paid a small amount on the debt. This proof was offered to sustain his plea of payment filed long after suit, and his testimony was in this respect denied by Choate except for $20. He says he put Choate in possession as an inducement to secure the advance of the money. The proof on this subject amounted to nothing more than placing the mortgagee in possession of the mortgaged premises without rent or charge. And we should remark incidentally that it in no sense tended to establish his plea of usury. The plea of payment, from its own statements, seems to be fictitious, except for a small amount, which it could not be pretended discharged the debt. The proof wholly failed to establish it. Were it not for the pleadings and prayer of Choate himself, and other issues arising from proceedings pending the suit, we would feel called on to disregard his case and all his assignments of error and affirm the judgment.

Plaintiff claimed that Choate had only a mortgage, but insisted that he should recover the premises without complying with his obligations thereunder. Defendant Choate claimed that the deeds were absolute conveyances to him of the land, but prayed in the alternative that the deeds be foreclosed as mortgages, thus putting in issue the question, which plaintiff may not have had the right to have adjudicated without offering compliance. Pending the suit, an injunction issued at the instance of Choate, by which plaintiff was dispossessed and deprived of the use of a part of the land in cultivation. This brought new issues into the case,

upon which plaintiff had the right to be heard.    He filed exceptions and an answer to the injunction proceeding, the first pleading on his part to this branch of the case—an ancillary suit.    His assignment of error to the ruling striking out such pleading because too late should be sustained. Sequestration was the proper remedy, whether Choate was suing for title to the land or to foreclose a mortgage, as will be seen from the petition for injunction.    Sayles' Civ. Stats., art. 4489, subdivs. 4, 5.    We can not sustain the court's ruling on this point.    Other assignments will be considered, upon the ground that they are in issue under the pleadings and prayer of the defendant Choate, and because of the results of the trial under charges of the court.

It is next insisted by the appellant that the court erred in failing to direct findings as to defendant Hemphill.    The evidence evolved Hemphill out of the case.    He had no claim to the 28 acres of land against Bateson or defendant Choate, nor had either of them any claim against him.    He made a deed to Choate to the land by agreement of all the parties, and received back his note, cancelled.    There was no issue as to him.    Choate's position is, that Hemphill's deed to him was an absolute conveyance; and plaintiff insists that it was made to Choate in trust for him, plaintiff.    In either event Hemphill was not interested.    The judgment disposed of him by recovery against him in favor of Choate, and he has not appealed.    Appellant has no ground of complaint, as insisted by him.

The appellant claims, by his third assignment, that the court committed error in submitting to the jury the question of foreclosure of mortgage as to the 75 acres of land, because such issue was not made by plaintiff's pleadings.    It is true plaintiff alleged that he made the deed to Choate for the 75 acres of land to enable him to effect a loan upon it, and that if he failed to procure the money in this way to settle the debt, the deed was to be cancelled; but the facts show, without this deed, that Choate had at least a lien or mortgage upon the 75 acres of land by force of the judgment transferred to him by the Lorance estate and the other facts connected with that transaction.    Plaintiff's position throughout was, that a mortgage only was intended, and that the deed to the 75 acres did not change it.    His evidence did not show that the deed was to be cancelled, but that if Choate could not raise money to pay off his claim, by hypothecating vendor's lien notes to be made by plaintiff to him in consideration of reconveyance of all the land to him by Choate, the matter was to stand as it was before.    It stood before as to the 75 acres as a mortgage, and the deed in such case, with other facts, would evidence that fact.    Choate made the issue of mortgage or not by the deeds, and plaintiff Bateson's testimony tended to establish the fact that only a mortgage was intended by all the transactions.    According to the plaintiff's view of his case, as made by his pleadings and testimony, there was a mortgage, and though

there may have been a technical inaccuracy in the court's charge (construing plaintiff's side of the case only) in referring the mortgage to the deed, such inaccuracy would be wholly immaterial. The court might have made the issue of mortgage or absolute deed depend on all the facts in evidence, and this would have been better; but the inaccuracy complained of was not vital.

The court in its charge to the jury seems to have limited the inquiry of mortgage or not to the intention of Bateson and Choate in the execution of the deed by the former to the latter for the 75 acres of land, regardless of transaction concerning the 28 acres of land.

The court instructed the jury, that if they should find that the deed for the 75 acres of land was an absolute conveyance, their verdict should be for the defendant Choate; but if it was intended as a mortgage, it should be foreclosed as such for the amount due Choate. The jury, after retirement to consider of their verdict, came into court and asked the following question: "If we find the deed to the 75 acres to be absolute, does that make the deed to the 28 acres absolute under your charge?" The court then gave the jury the further instruction, that if they should find that the deed from Bateson to Choate was "an absolute conveyance of the title to the land named in the said deed, as a settlement of the debt due Choate from plaintiff, then you will find for the defendant Choate without further consideration, and so say by your verdict."

Assignments of error raise the question as to whether the charge was correct in requiring a verdict for defendant Choate if the deed to the 75 acres should be found to be an absolute conveyance of the land.

We are of opinion that the charge was erroneous. The fact to be found would not necessarily conclude all question as to the deed to the 28 acres of land. This question should have been left to the jury. They may have concluded that the deed to the 75 acres was of itself a complete and full settlement of the amount due Choate, without including the 28 acres, in which case the verdict should have been restricted to a recovery by Choate of only the 75 acres, and the judgment would have been for such recovery. Or they might have decided that the transaction, relating to the conveyance of the 75 acres, considered separately, made it an absolute sale, and yet that the transaction with reference to the deed of Hemphill was only intended as a mortgage, and, therefore, that the entire matter was of mortgage character.

There was testimony from which they may have found that the Hemphill deed was intended as a security only, notwithstanding their conclusion that the other deed was absolute. All the testimony was not of this character, but on proper submission, from such considerations the jury may have so decided. They may also have decided that when plaintiff executed the deed to the 75 acres, the other deed was intended to be made final or become so. But it was not the province of the court to make the

one fact conclusive of the other. The verdict was in general terms as to the land for defendant Choate, and judgment was rendered for him for all the land, doubtless from the consideration alone that the deed to the 75 acres was absolute. The finding of such fact may be an argument that the other deed was indefeasable, and the jury may have so decided, but it is not conclusive. The jury should have been allowed to pass on the question. If they had been allowed to do so, they may have said, that upon all the facts, Choate had only a debt, with mortgage on all the land, or title to the 75 acres only, or title to all the land.

We are of opinion that the judgment of the lower court should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted June 14, 1892.